Argued September 18, defendant disbarred October 10, 1916.

STATE EX REL. *v.* FARRIN.

(160 Pac. 124.)

**Payment—Right to Receipt.**

1. Under section 876, L. O. L., providing that whoever pays money is entitled to a receipt therefor from the person to whom the payment is made, and may demand a proper signature as a condition of the payment, an attorney employed to collect claims, who kept his clients advised of the true state of the business, and promptly, on receipt of their money from the debtor, paid them what was due them under the agreement for collection, was entitled to a receipt for the money.

**Attorney and Client—Suspension—Deceit—Statute.**

2. Under section 1092, L. O. L., providing that an attorney may be removed or suspended for being guilty of any willful deceit or misconduct in his profession, where an attorney, handling claims for collection, after being notified by the debtor that it would pay in full on presentation of the bill, wrote his client to ascertain the least the claim would be compromised for, thus intimating that the matter was yet unsettled, and, after receiving two checks for the amount of the claim from the debtor, which he indorsed without authority and cashed, did not admit that he had collected the money until his client had direct communication with the debtor, such attorney will be suspended from membership of the bar for one year.

> [As to causes and proceedings for disbarment of attorneys, and the power of courts to disbar, see notes in 95 Am. Dec. 333; 45 Am. St. Rep. 71.]

Original proceeding in disbarment.

Department 1.   Statement PER CURIAM.

Original proceeding by the State of Oregon before the Supreme Court, on the relation of John McCourt, John H. McNary, O. P. Coshow, Loring K. Adams and Alfred Hampson, comprising the grievance committee of the Oregon Bar Association, to secure the disbarment of George N. Farrin, as a practicing lawyer.   Defendant suspended from membership of the bar of the court for one year.

DEFENDANT SUSPENDED.

*Mr. Elton Watkins,* for the relators.

*Mr. C. H. Libby,* for defendant.

Opinion PER CURIAM.

This is an original proceeding in this court in the name of the state upon the relation of the grievance committee of the Oregon Bar Association to secure the disbarment of the defendant as a practicing lawyer.   He was associated with Frank G. Micelli in the practice of law in Portland.   It is stated in the complaint and admitted in the evidence that Micelli had nothing whatever to do with the transaction in question, and is not in any way to blame or responsible for the matters of which complaint is made. For convenience of designation, therefore, the defendant will be referred to as such  or as the firm. Two brothers, J. A. and Alvin Smith, had a demand of $200 each against the Weyerhauser Land Company to be mentioned as "the company" for patroling timber lands in southern Oregon during the year 1910.   They were somewhat in doubt about who was liable to them for their services and had been unable

to collect for them. During the month of April, 1914, they placed their claim in the hands of the firm of Farrin & Micelli for collection. The business was intrusted entirely to the defendant Farrin. The company had a Portland office and also one in Tacoma, Washington. The defendant on April 13th addressed a letter over his firm name to the company demanding payment of the claim. The latter responded promising to look into the matter, saying that the transaction in the beginning was under the supervision of an agent then in Washington, D. C., and that it should receive prompt attention and decision on his return. This phase of the matter was the subject of several letters from the company to the firm. On May 22, 1914, he wrote to them a very sharp demand for the payment of the money. On June 1, 1914, writing from the Tacoma office the company informed the firm that Mr. McCormack the agent already mentioned recommended payment in full of the claim of $400, and closed by saying in substance that if the defendant would submit a bill for the amount the company would send to him a check for it. On the 3d of the same month the company writing from Tacoma to the defendant acknowledged his letter with the bills of the Smiths for $200 each, and returned them, with two checks for the same, payable to the order of the Smiths for $200 each, and asked the defendant to have the bill receipted and mailed to the company. On this same third day of June, 1914, although he had been notified as stated by the letter of the company of date June 1st that the bills would be paid in full on presentation, the defendant in the firm's name wrote to Alvin Smith to this effect:

"I have been continually working on the case of yourself and brother J. A. v. Weyerhauser Timber Company with very much success."

He then continues substantially asking that the Smiths let him know the least they would compromise for, stating that he thought he could get $100 or possibly $200 in full settlement of all claims, and closed by asking his addressee to tell him the best he would do, and that in turn the writer would do the best he could in the matter. The next in order in the correspondence is a letter from the company to the defendant reminding him that on June 3d, the company had sent him two checks for $200, but had had no acknowledgment of the same. On that same date the company wrote J. A. Smith, stating that they had sent to the firm on June 3d checks covering the amount. On July 6th the company notified the firm about having written to the Smiths on the subject. Following this, on July 8th, the defendant wrote to the Smiths, saying:

"We have succeeded in getting a settlement from the Weyerhauser Timber Company for your account and are sending you herewith receipts to sign. Upon receiving the same we will forward a check to you."

On July 13th Alvin Smith wrote to Micelli an individual letter informing him that the Smiths had received a letter from the company, saying that they had paid the firm on June 3d and demanding that the amount be forwarded to the Smiths without delay, saying that they could not receipt for the money until they received it. On July 16th the defendant wrote to Smith substantially that the Weyerhauser firm was willing to settle, but not until they got a receipt for $200 each, and requested them to send such; that the defendant's firm would hold it and get such settlement as they could turning over the receipt and sending to the Smiths their amount of the collection. On July 18th Alvin Smith wrote to the firm declaring

that in their letter of July 8th already referred to they did not send any receipts. He again called attention to the fact that the company claimed to have made payment on June 3d. Again on July 18th the company reminded the defendant's firm that Smith claimed not to have received the money in payment of his claim and requested that the defendant get the Smiths' receipts. Finally, on August 31st, the matter seemed to have gotten into the hands of John D. Goss of Marshfield. Acting for the Smiths, he addressed a letter to the firm, saying that the Smiths refused to sign the receipts for $400 on payment of only $200. He recited a history of the transaction, quoted parts of the letters to the Smiths, demanded that the defendant pay $360, and suggested sending the money to the First National Bank at Marshfield to be paid on delivery of the receipts. On September 10th the defendant replied in his firm name to Goss, saying he was ready to pay the Smiths $100 received on the collection on execution of a receipt to Weyerhauser, and declared that the money would be held by the defendant's firm until the receipt was sent through the bank to be paid the Smiths on delivery of the receipt in full, the defendant's firm retaining one half of the collection, as he stated, "according to agreement." At the bottom this is initialed F. G. M., E. E. L., as though F. G. Micelli had dictated to the stenographer, whose initials were E. E. L. The defendant admits that he himself wrote this letter. The last chapter in the exhibits on the case are two receipts, "pro tanto" one from each of the Smiths for $100 to the Weyerhauser Land Company under date of January 30, 1915.

Alvin Smith testifies that he put the account into the hands of the firm for collection to compromise or

do any way to get it or any part of it and he would
be satisfied. He says there was nothing said about
the charge for collection. Micelli says there was
nothing definite stated on that subject. On the other
hand, the defendant declares that afterward Smith
returned to the office and told him he would give him
one half of the amount collected as his fee for his ser-
vices. Without any authority except what might be
implied by having been intrusted with the collection
of the claim, Farrin indorsed the two checks sent by
the company writing the name of the payee on the
back, Alvin Smith in one case, and J. A. Smith in
the other. The two names are written in different
handwriting. They are not signed Alvin Smith by
G. N. Farrin, and J. A. Smith by G. N. Farrin, but
simply the names of the payee. He attributes the
difference in the appearance of the two names he
wrote on the checks to the fact that, as he states, he
used a sharp pen for one and a stub pen for the other.
He delivered these to a man named Cone, who nego-
tiated them to the Scandinavian-American Bank in
Portland on June 5, 1914, receiving his money on the
Alvin Smith check and depositing the other for col-
lection. The latter was finally paid and the defend-
ant received the entire proceeds of $400. Micelli tes-
tifies that when he received the individual letter from
the Smiths he asked the defendant if he had collected
the money, and the latter responded that he had not.
This letter was dated July 13, 1914.

There is no distinct admission in any of the defend-
ant's letters that he had the money until September
10, 1914, in answer to the letter from Goss. On the
contrary, after having been notified by the company
in its letter of June 1st that they would pay the full
amount of $400 on presentation of the bill, he wrote

to Alvin Smith and wanted to know the least the claim would be compromised for, intimating that the matter was yet unsettled. It is a marked coincidence that it was not until the Smiths had direct communication from the company and he had been stirred up by the letter of Goss that the defendant directly admitted that he had collected the money. The tone of his correspondence up to that time was to the effect that the company was demanding a receipt direct from the Smiths as a condition precedent to paying the money, when in fact the company had made receipts a condition subsequent. It is not altogether a dispute between an attorney and his client about the fee of the former.

1, 2. It is said in Section 1092, L. O. L.:

"An attorney may be removed or suspended by the Supreme Court for either of the following causes, arising after his admission to practice. * * 3. For being guilty of any willful deceit or misconduct in his profession. * * "

The quality of deceit is written large throughout the correspondence of the defendant with his clients. Knowing full well that the claim would be paid in full on presentation, he magnifies his office and pretends that the matter is still open for adjustment and compromise. This was evidently intended to deceive and mislead those whom he represented. If he could have been equipped with receipts in full for the $400 he might have pocketed the entire amount and flaunted them in the face of his clients as a bar to their claim for the money.

It was his duty to keep his employers advised of the true state of the business and promptly on receipt of their money to have paid them their just dues, whether it be 50 or 90 per cent of the collection. On

doing so he would have been entitled to a receipt for the money, under Section 876, L. O. L., reading thus:

"Whoever pays money, or delivers an instrument or property, is entitled to a receipt therefor, from the person to whom the payment or delivery is made, and may demand a proper signature to such receipt as a condition of the payment or delivery."

Evidently these are concurrent conditions, and he had no right to demand a receipt in full as a condition precedent to sending them the money. If he had desired to act fairly and honestly with the Smiths he could have sent the money promptly to some responsible banking institution near their residence with instructions to pay it to them on execution of the necessary receipts.

The conduct of the defendant is not in accordance with the ethics of the profession, and, for the protection of the court and of clients in general, for the proper administration of justice, and to maintain the dignity and purity of the practice of law, it is ordered that the defendant be suspended from a membership of the bar of this court for the period of one year.

DEFENDANT SUSPENDED.